# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH ARNOLD, | ) Civil Action No. 2: 16-cv-1299 |
| Plaintiff, | ) |
| v. | ) Chief United States Magistrate Judge |
| | ) Cynthia Reed Eddy |
| SUPERINTENDENT R. GILMORE, LT. E. GREGO, C.O. J. RICE, and C.O.1 SUHAN, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

Presently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 136). For the reasons set forth below, the motion for summary judgment will be granted in part and denied in part.

Procedural Background

Plaintiff, Kenneth Arnold ("Plaintiff" or "Arnold"), is a state prisoner currently housed at the State Correctional Institution at Forest ("SCI-Forest") in Marienville, PA. He instituted this pro se prisoner civil rights action pursuant to 42 U.S.C. § 1983 with the filing of a Motion for Leave to Proceed in forma pauperis on August 26, 2015 (ECF No. 1). Because the motion was not accompanied by the requisite financial information, the motion was denied. (ECF No. 2). Plaintiff submitted a second Motion for Leave to Proceed in forma pauperis on September 21, 2016 (ECF No. 3). The motion was granted (ECF No. 4) and the Complaint was docketed on

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. See ECF Nos. 7, 108, and 146.

September 22, 2016. (ECF No. 5). On January 7, 2017, Arnold filed an Amended Complaint, which remains his operative pleading. (ECF No. 29).

The allegations of the Amended Complaint are based on events which occurred on September 20, 2014, when Arnold was housed at SCI-Greene, and was violently assaulted by another inmate. Following the Court's decision on Defendants' motion to dismiss in which Arnold's due process claims were dismissed, the parties proceeded to discovery on a failure to protect claim against Superintendent Robert Gilmore, Lt. E. Grego, C/O Rice, and C/O1 Suhan.

Discovery has closed and Defendants now move for summary judgment. Defendants have filed in support of their motion a brief with an appendix of record evidence (ECF No. 141), and a concise statement of undisputed material facts (ECF No. 142). In response, Arnold has filed a brief in opposition to the motion for summary judgment (ECF No. 148), a responsive concise statement with an appendix of record evidence (ECF No. 149), and a responsive counter statement to undisputed material facts with an appendix of record evidence (ECF No. 150). The matter is fully briefed and ripe for disposition.

## Relevant Factual Background

On June 10, 2014, officers with the SCI-Greene Security Department prepared a written report which stated that "[Arnold] is in danger by/from some persons in the facility and cannot be protected by alternative measures." (141-2; ECF No. 148-2). Arnold was never informed why this report was prepared or advised of what individual(s) posed a danger to him. On June 17, 2014, the Program Review Committee, based on the verbal recommendation of Lt. Grego, issued a report recommending that Plaintiff be released to general population, depending on the availability of bed space.

On September 20, 2014, while in general population, as Arnold was walking to breakfast around 7 AM, he was injured when fellow inmate, Lamar Stansbury, assaulted and stabbed him during two separate altercations. Arnold contends that he yelled to Defendant Rice for help, but that Rice did not intervene and did not report the assault to his superiors.

Once Arnold was back in his cell, he discovered that he had substantial puncture wounds to his back, arm, shoulder, and face. He alleges that as C/O Suhan walked past his cell, he told C/O Suhan that he had been attacked by another inmate and that he needed medical attention. According to the Amended Complaint, C/O Suhan replied, "I don't want to hear it, stay in your cell." Amended Complaint, at ¶ 24. "With no other immediate resources available and all attempts to inform staff of assault had been ignored, Plaintiff destroyed an old radio and used pieces from it to make a knife to protect himself against any future attacks." *Id*. at ¶ 26.

Later that morning, at approximately 11:00 AM, as Plaintiff was walking to the dining hall for lunch, he saw inmate Stansbury and told C/O Suhan that he felt inmate Stansbury would assault him again. C/O Suhan failed to intervene or report this to his supervisors. Arnold turned to walk back to his cell, at which time Stansbury aggressively approached him and said, "this time I will kill you." Arnold states that because he feared for his life, and he and four other inmates began to chase Stansbury until Stansbury was finally subdued by officers. Arnold was then admitted to the prison infirmary and received treatment for seven stab wounds, including one to his head that required stitches.

Following the completion of an investigation of the altercation with Stansbury, Arnold was issued a misconduct (B694979) on October 1, 2014, charging him with assault, fighting, engaging in authorized group activity, refusing to obey an order, and possession of a contraband weapon. Arnold contends that this misconduct report is false. After a disciplinary hearing,

Plaintiff was found guilty of assault, engaging in unauthorized group activity, refusing to obey an order, and possession of contraband weapon. He was sanctioned to 300 days in disciplinary custody, effective September 20, 2014.

On October 5, 2014, Arnold filed a grievance, No. 530064, in which he complained, *inter alia*, that "none of the guards did anything to stop the assault." Superintendent Gilmore reviewed the grievance appeal and initially remanded the appeal instructing security to more fully address the issues raised about the timeliness of staff response. A subsequent report was prepared and Arnold again appealed. Superintendent Gilmore denied the second appeal. (ECF No. 141-13).

Arnold contends, as will be explained below, that his constitutional rights were violated because each of the Defendants knew about the risk of harm he faced and each was deliberately indifferent to his safety.

<u>Standard of Review</u>

The standard for assessing a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. *See Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992).

This standard is somewhat relaxed with respect to *pro se* litigants. Where a party is representing himself *pro se,* the complaint is to be construed liberally. A *pro se* plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986) ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS,* 214 F.3d 402, 407 (3d Cir. 2000); *see also Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.").

In order to survive a motion for summary judgment on a § 1983 claim, a plaintiff must adduce evidence that the defendants acted under color of state law and that the plaintiff was deprived of a right, privilege, or immunity secured by the Constitution or federal law. *See*

*Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255–56 (3d Cir. 1994). It is not disputed that Defendants were acting under the color of state law. Therefore, the issue is whether Defendants violated Arnold's Eighth Amendment rights.

## Discussion

Arnold's failure to protect claims are based on the Cruel and Unusual Punishment Clause of the Eighth Amendment, which imposes on prison officials "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994); *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.' " *Farmer*, 511 U.S. at 834 (*quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). *See also Davidson v. O'Lone*, 752 F.2d 817, 821-22 (3d Cir. 1984), *aff'd sub nom Davidson v. Cannon*, 474 U.S. 344 (1986).

There are two requirements a prisoner must satisfy to establish a violation of the Eighth Amendment based on a failure to protect. First, "the deprivation alleged must be objectively, 'sufficiently serious[.]' " *Farmer*, 511 U.S. at 834. That is, an inmate must show that there is a substantial risk of harm. *Id.* (*citing Helling v. McKinney*, 509 U.S. 25, 35 (1993) ). This is an objective inquiry. *Bistrian v. Levi*, 696 F. 3d 352, 367 (3d Cir. 2012). Second, the inmate must show that the prison official had "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (*quoting Wilson v. Seiter,* 501 U.S. 294, 297 (1993)). This means that the prison official must be deliberately indifferent to the inmate's health and safety. *Farmer,* 511 U.S. at 834.

Deliberate indifference is a state of mind "more blameworthy than negligence[,]" and reflecting greater than an "ordinary lack of due care for the prisoner's interests or safety." *Id.* at 835 (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Deliberate indifference is determined

6

through a subjective test, which means that the prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Therefore, the simple presence of a risk is insufficient to establish deliberate indifference where the official did not actually perceive the risk. *Id.* at 838. Injury from a fellow prisoner, in and of itself, does not amount to a violation of the Eighth Amendment. *Counterman v. Warren Cnty. Corr. Facility*, 176 F. App'x 234, 238 (3d Cir. 2006) (*citing Farmer*, 511 U.S. at 834) ("It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety.").

The United States Court of Appeals for the Third Circuit has elaborated on the deliberate indifference standard in the context of suits against prison officials for failure to protect an inmate from harm caused by other inmates, stating that "a prison official is deliberately indifferent when he knows or should have known of a sufficiently serious danger to an inmate." *Young v. Quinlan*, 960 F.2d 351, 361 (3d Cir. 1992), superseded by statute on other grounds as stated in *Ghana v. Holland*, 226 F.3d 175, 184 (3d Cir. 2000). The term "should have known" is a term of art, which

> [d]oes not refer to a failure to note a risk that would be perceived with the use of ordinary prudence. It connotes something more than a negligent failure to appreciate the risk . . . , though something less than subjective appreciation of that risk. The "strong likelihood" of [harm] must be "so obvious that a lay person would easily recognize the necessity for" preventative action. [T]he risk of . . . injury must be not only great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges.

*Id.* (*quoting Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1025 (3d Cir. 1991)) ("*Colburn II*") (citation omitted, alterations in original). So then, to survive a motion for summary judgment on his failure to protect claims, Arnold must produce sufficient evidence to support the inference

7

that Defendants "knowingly and unreasonably disregarded an objectively intolerable risk of harm." *Beers-Capital v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001). Knowledge of a risk can be shown either through actual notice, or where there is a "longstanding, pervasive, well-documented, or expressly noted" risk and the circumstances are such that a defendant had information regarding the risk that would allow the court to infer that defendant knew about the risk. *Nami v. Fauver*, 82 F.3d 63, 67-66 (3d Cir. 1996); *Farmer*, 511 U.S. at 842.

With these standards in mind, the Court will address Arnold's failure to protect claims. Defendants raise several arguments in support of their motion for summary judgment. These will be addressed below.

    A.    <u>Superintendent Gilmore</u>

Arnold's claim against Gilmore is related to his supervisory role and his involvement in the grievance process as the superintendent of SCI-Greene. In the Amended Complaint, Gilmore is named as "superintendent of Greene State Correctional Institution in the capacity he was responsible for ensuring the wellbeing of prisoners under his supervision." (Amended Complaint at ¶ 6). Also, in his Amended Complaint, Arnold alleges that Gilmore reviewed and denied his appeal on the "fabricated" misconduct (B 694979) issued on 10/1/2014. (*Id.* at ¶¶ 58-59). Further, when asked during his deposition why Gilmore should be a party to this case, Arnold responded, "[b]ecause he don't want to be held liable for what the people under him did. Also, Gilmore refused to address my claim and a grievance that I wrote to him directly." (Arnold Depo., Exh. 4 at p. 43). Defendants assert that defendant Gilmore cannot be held liable under Section 1983 because he was not personally involved in the alleged constitutional deprivation.

Liability under § 1983 cannot be imposed vicariously or under the grounds of respondeat superior. *See Rode v. Dellarciprete,* 845 F.2d 1195 (3d Cir. 1988). A § 1983 defendant's conduct must have a close causal connection to plaintiff's injury for liability to attach. *See Martinez v. California,* 444 U.S. 277, 285 (1980). A defendant must have participated in or had knowledge and acquiesced in the alleged violation. *See Rizzo v. Goode,* 423 U.S. 362 (1976); *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293 (3d Cir. 1997).

To impose liability on a supervisory official there must be "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate." *Colburn v. Upper Darby Township*, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied,* 489 U.S. 1065 (1989).

Arnold has not offered any evidence demonstrating any participation, knowledge, or acquiescence by Gilmore in the alleged violation of Plaintiff's Eighth Amendment rights. Absent evidence that Gilmore was personally aware of any facts suggesting a substantial risk of harm existed for Arnold, it is appropriate to grant summary judgment on this portion of Arnold's claim.

Further, Gilmore's denial of Arnold's grievance appeal is not the kind of involvement that is sufficient to establish liability in a § 1983 action. *See Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmates grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right.); *Brooks v. Beard,* 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegations that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were

involved in the underlying allegedly unconstitutional conduct.). In this case, Arnold's grievance complained of discrete, past acts which resulted in Arnold being attacked by another inmate on September 20, 2014; the grievance had not been brought to correct an "ongoing violation."

For all these reasons, summary judgment will be granted as to all claims against Defendant Gilmore. The summary judgment record is not so clear with respect to the remaining three defendants.

B. Lt. Grego

Lt. Grego was a lieutenant in the Security Office at SCI-Greene during the time of the events of this lawsuit. On June 10, 2014, Arnold was placed in administrative custody for his own protection based on Report #B699677, which was prepared by the Security Office, and states, "I/M is in danger by/from some person(s) in the facility and cannot be protected by alternate measures." (ECF No. 141-2; ECF No. 148-2). Grego stated in his Declaration, that "there are no written reports for this type of assessment or investigation. The information is generally passed on to the PRC members verbally whether to continue AC status or recommend release to general population." Declaration at ¶ 5. (ECF No. 141-10). Grego also explains that that "[t]here were no formal reports (nor was there a security review done), regarding [Arnold's] placement in AC on 6-10-14 and ultimate release on or about 6-17-14 subject to bed space." *Id*. at ¶ 7. And that "[w]hen an 'other' report states that the reason for AC placement is: 'i/m in danger by/from some person(s) in the Facility and cannot be protected by alternate measure' this is a standard phrase covering a whole range of situations (ie., concern that housing in general population status could be dangerous to the inmate or to others) and intended to be broad and not specifically a 'finding' or conclusion." *Id.* at ¶ 2.

Arnold remained in administrative custody until June 17, 2014, at which time the Program Review Committee ("PRC") decided to release Arnold to general population on the recommendation of Grego. Arnold testified in his deposition that although he was told he was in danger, "they never told me who I was in danger by, why I was in danger. They never gave me none of that information. But I was placed in the hole under those circumstances, and they said I good to go and they let me out." Pl's Depo. at 40-41 (ECF No. 141-3). Arnold further testified that,

> Honestly, for them to put me in the hole on AC under the observation that I was in danger by some people in the facility. I think, you know, for them to do that they had to have some type of information. For them to think it was necessary for me to be in the hole, they thought I was in danger for somebody. I mean, there had to be some type of information for them to justify that placement.
>
> . . .
>
> I mean, I don't know what type - I don't know what type of investigation they conducted, I don't know if they did an investigation after I was placed in the hole under those conditions.
>
> All I knew is I was placed under the - in the hole, they say I was in danger by somebody in the facility and when I got out in the facility, I got stabbed seven times. That's the facts.

*Id*. at 53 - 54.

The summary judgment is void of any evidence explaining what the concern was which required placing Arnold in administrative custody. What the summary record does reflect, however, is that six weeks after Arnold was returned to general population,[2] he was violently

---

[2]  Arnold points out in his deposition that while he had been "out of the hole two and a half months" prior to the attack, he had been transferred to a "different side of the jail," where the attack occurred, only approximately two weeks before the attack. "The jails are separated, so basically what I'm saying they ain't going to get to me on that side of the jail. I had to be on that side of the jail with [Stansbury] for him to be able to assault me." Pl's Depo. at 42. (ECF No. 141-43).

attacked and stabbed seven times by inmate Lamar Stansbury, an inmate who Arnold did not know. *See* Pl's Depo. at 13. (ECF No. 141-3). Arnold testified in his deposition that he did not know why he was attacked. *Id*. at 50.

After the incident, Stansbury was interviewed and stated that another inmate had approached him and told him that he would "get paid" if he would stab Arnold. Stansbury said he agreed to the stabbing and took the weapon from the inmate. (ECF No. 141-6).

Taking Arnold's version of the facts as true, the Court finds that a genuine question of material fact exists as to whether Defendant Grego was deliberately indifferent to Arnold's safety. Summary judgment, therefore, will be denied as to Defendant Grego.

C.  C/O Rice[3]

According to the Amended Complaint, as Arnold was walking back to his housing unit after breakfast, he was "ambushed" by Stansbury who began stabbing him from behind. Arnold's attempts to initially ward off Stansbury were successful and Stansbury began to walk away. At this point, Arnold yelled to C/O Rice for help, but Rice did not respond. Arnold continued walking to his housing unit, and Stansbury returned and began stabbing Arnold on the left side of his face between the temple and ear area. Arnold again yelled for help from C/O Rice, who again failed to intervene and protect Arnold from assault. (Amended Complaint, at ¶¶ 16 - 22).[4]

---

[3]  C/O Rice was identified in the Amended Complaint as "C/O1 first name unknown Gray." As a result of discovery, Plaintiff amended the Amended Complaint to substitute "C/O1 first name unknown Gray" with "C/O Rice."

[4]  Defendants have submitted videotapes from the security cameras recording the A/B walks on September 20, 2014. However, as Defendants acknowledge the quality video of the 7 AM incident is poor, as is the video of the 11 AM incident. It is impossible to identify either Arnold or Lamar Stansbury, the attacker, from the videos, and the stabbing incident cannot be seen. Where critical events at issue have been captured on videotape, the Court is obliged to

Defendants counter by stating that the A/B walk is immense and that "Plaintiff's own contradictory recount of the first altercation, even if taken as true, would not lead a reasonable jury to conclude that Defendant Rice saw the altercation and had adequate time to respond."

Taking Arnold's version of the facts as true,[5] the Court finds that a genuine question of material fact exists as to whether Defendant Rice was deliberately indifferent to Arnold's safety. Summary judgment, therefore, will be denied as to Defendant Rice.

D.     C/O1 Suhan[6]

Through his Amended Complaint, Arnold alleges that once he returned to his cell after the 7 AM incident, he told C/O1 Suhan that he had been assaulted by another inmate and needed medical attention. Amended Complaint, at ¶ 24. (ECF No. 29). Suhan allegedly responded, "I don't want to hear about it, stay in your cell." *Id*. Later that morning, Arnold alleges that as he was

> in route to report the prior two assaults to a lieutenant who is usually on post in front of the dining hall during facility meals, Plaintiff was approached again by Inmate Stansbury #KK0981. At this time, Plaintiff warned [Suhan] who was at his assigned post on A Block 1 B Block walk that he felt inmate Stansbury would

---

consider that videotape evidence in determining whether there is any genuine dispute as to material facts. *See Scott v. Harris*, 550U.S. 372, 380-81 (2007). In the case *sub judice*, the limited perspective of the videos does not permit any definitive conclusions regarding what transpired on September 20, 2014. The video has no audio so the Court is unable to hear anything said by any of the parties. Therefore, the Court does not find that the videos are helpful in assessing the credibility of the parties' competing factual narratives.

[5]     In support, Defendants argue that the record contains contradictory statements by Arnold in that he contends that Rice could see the 7 AM altercation and that he yelled for help from Defendant Rice. But Arnold testified in his deposition that he only asked the guard to help after the fight broke up. Defendants will be able to cross examine Plaintiff at trial about any possible contradictions in his testimony.

[6]     C/O1 Suhan was identified in the Amended Complaint as "C/O1 John Doe." As a result of discovery, Plaintiff amended the Amended Complaint to substitute "C/O1 John Doe" with "C/O1 Suhan."

assault him again for the third time. Defendant [Suhan] failed to intervene or report to his superiors.

At this time, Plaintiff turned back around to return to his assigned housing unit. When Plaintiff looked back behind him Plaintiff observed inmate Stansbury #KK0981 walking aggressively towards him. Inmate Stansbury #KK0981 then told Plaintiff "this time I will kill you."

At this time Plaintiff felt his life was in danger and after several attempts to request help from [Rice] and [Suhan] were unsuccessful Plaintiff had no other choice but to protect himself.

Plaintiff ultimately chased inmate Stansbury #KK0981 with a weapon until Officers subdued inmate Stansbury #KK0981.

*Id*. at ¶ 28, 30-32.

Suhan, in an unsigned Declaration, states that "at no point on September 20, 2014, did inmate Arnold inform me or attempt to inform me that he had been injured by inmate Stansbury." Declaration of Suhan, ECF No. 141-9.[7]

Taking Arnold's version of the facts as true, the Court finds that a genuine question of material fact exists as to whether Defendant Suhan was deliberately indifferent to Arnold's safety. Summary judgment, therefore, will be denied as to Defendant Suhan.

**III. Conclusion**

For all these reasons, Defendants' Motion for Summary Judgment will be granted in part and denied in part. An appropriate Order follows.

Dated: February 4, 2019    s/Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

---

[7] As a procedural matter, Defendants submitted the unsigned Declaration of Suhan. The evidentiary value of this declaration is drastically reduced because it is unsigned. *See Bastista v. U.S. Dept. of Justice,* 129 F. App'x 724, 725 (3d Cir. 2005) ("We will not consider the unsigned declaration that the Government submitted to show that [defendant] failed to exhaust his administrative remedies").

14

cc:     KENNETH ARNOLD
GN-7646
SCI Forest
Post Office Box 945
Marienville, PA 16239
(via U.S. First Class Mail)

John P. Senich, Jr.
(via ECF electronic notification)